IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:16-cv-00055

LOUIS SCOTT

      Plaintiff,

v.

CITY AND COUNTY OF DENVER,
THE DENVER POLICE DEPARTMENT,
OFFICER ROBERT FAMBROUGH,

      Defendants.

## COMPLAINT

Plaintiff Louis Scott, by and through his attorneys Gordon & McWhirter, LLC, hereby submits \this Complaint and states:

### JURISDICTION & VENUE

1. This Court has original jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343, because Plaintiff's cause of action arises under the Constitution of the United States and 42 U.S.C. § 1983.

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred within this judicial district.

### PARTIES

3. Plaintiff Louis Scott is an individual and resident of Aurora, Colorado.

4. Defendant Fambrough is an individual and, at all times relevant to this Complaint, was an officer of the City and County of Denver and the Denver Police Department acting under color of state law as a member of law enforcement.

5. On information and belief, the City and County of Denver is a political subdivision of the State of Colorado operating a police department known as the Denver Police Department.

## FACTUAL ALLEGATIONS

6. Plaintiff incorporates by reference all paragraphs of this Complaint as though fully set forth herein.

7. Prior to and including January 8, 2014, Plaintiff was employed as a bail bondsman in Denver, Colorado.  Plaintiff is recognized as a bail bondsman by many people throughout the Denver Metro Area.

8. Plaintiff's employment as a bail bondsman required him to possess a concealed carry permit and to carry a concealed weapon while on the job.

9. Prior to and including January 8, 2014, Plaintiff had a valid concealed carry permit issued to him by the County of Arapahoe, State of Colorado – the county in which he resided at that time.

10. Given the potentially violent nature of his employment and the possibility that he may have significant sums of cash on his person at any given moment, it is customary for Plaintiff to have his pistol holstered on his person beginning from the time he leaves for work until the time he returns home.

11. On or about January 8, 2014, after completing his day's work at approximately 5:00 p.m., but before returning home, Plaintiff stopped by the Pierre Supper Club – a then-existing restaurant located near the intersection of 22nd Avenue and Downing Street in the City of Denver, State of Colorado. At the Pierre Supper Club, Plaintiff ordered multiple entrees to bring to his family for dinner.

12. At the Pierre Supper Club, Plaintiff had not less than $150.00 on his person and his pistol holstered on his hip.

13. While waiting for his entrees to be served, Plaintiff passed the time by engaged in conversations with various patrons of Pierre Supper Club.

14. After Plaintiff purchased his entrees, Plaintiff exited the Pierre Supper Club while wrapping up a conversation with the owner of the Pierre Supper Club. The owner of the Pierre Supper Club stood with Plaintiff on the sidewalk as they finished their conversation.

15. After the conversation with the owner of the Pierre Supper Club concluded, Plaintiff attempted to walk across Downing Street towards his vehicle parked across the street, when he was struck by a vehicle.

16. As a result of being so struck, Plaintiff face smashed into the windshield as he tumbled over the vehicle and fell in a heap on the street. Plaintiff pistol was knocked free from its clip and was laying on the ground next to Plaintiff.

17. Responding in shock, Plaintiff sprang to his feet immediately after the accident. Despite numerous witnesses advising Plaintiff to remain still; Plaintiff maintained that he was "okay." In fact, Plaintiff was not "okay." The witnesses concern was

based on Plaintiff's numerous, obvious injuries about his face, including, missing, chipped and/or loosened teeth; a laceration on the outside of his upper lip, a laceration inside his mouth; a tooth embedded in his lip; and a concussion. Blood was pouring from Plaintiff's mouth.

18. Plaintiff noticed that his pistol was laying on the street and, consistent with his weapon safety training, immediately picked it up to secure it.

19. A friend of Plaintiff and witnesses to the accident offered to store Plaintiff pistol in Plaintiff's car. Plaintiff relinquished the pistol to his friend who placed it inside Plaintiff's car and locked the car door.

20. Shortly after the accident, an ambulance arrived and paramedics secured Plaintiff to a gurney in preparation for transporting Plaintiff to a nearby hospital for medical treatment.

21. While Plaintiff was receiving medical care from the paramedic in the ambulance, Defendant Fambrough arrived on the scene and interviewed the driver of the vehicle that struck Plaintiff.

22. The details of that interview are explained in Defendant Fambrough's statement establishing probable cause. During that interview, the driver who – recently struck a pedestrian with his car – advised Defendant Fambrough that after the accident, the driver assisted Plaintiff to his feet and that as Plaintiff rose to his feet, a pistol fell out of his pocket. According to Defendant Fambrough's statement, the driver then told Defendant Fambrough that Plaintiff picked the pistol up off the ground and stuck it in his pocket.

23. Defendant Fambrough approached the ambulance to interrogate Plaintiff concerning the pistol.  Defendant Fambrough's instruction to Plaintiff was abrupt, singular, and blunt – Defendant Fambrough wanted Plaintiff to immediately surrender the pistol.   In response and while nursing significant injuries, Plaintiff repeatedly and calmly advised Defendant Fambrough (1) that Plaintiff was a bondsmen, (2) that the gun was secure within Plaintiff's locked vehicle, (3) that Plaintiff had a concealed carry license in his wallet, which was lying next to him in the ambulance, and (4) that Plaintiff had committed no crime and, therefore, Plaintiff was not going to give Defendant Fambrough permission to enter his vehicle.

24. Defendant Fambrough's demands for Plaintiff's pistol escalated.  Defendant Fambrough advised Plaintiff that, one way or another, he was going to get Plaintiff's pistol. Defendant Fambrough gave Plaintiff an ultimatum – Plaintiff could either consent to a search of his vehicle or else Defendant Fambrough would have Plaintiff's car impounded and searched.  Plaintiff maintained that he would not give Defendant Fambrough permission to search Plaintiff's vehicle.

25. Defendant Fambrough did not impound Plaintiff's vehicle.  Rather, while Plaintiff was strapped to the gurney, Defendant Fambrough seized Plaintiff's car key; entered Plaintiff vehicle notwithstanding Plaintiff's unwavering denial of consent to search; and seized Plaintiff's pistol.

26. Despite the owner of the Pierre Supper Club being a witness to (1) Plaintiff's activities prior to the accident, (2) the accident, and (3) the events following the

accident, Defendant Fambrough never spoke to the owner of the Pierre Supper Club during his investigation.

27. On information and belief, prior to taking Plaintiff's car key, Defendant Fambrough did not have a warrant to seize Plaintiff's car key.

28. On information and belief, prior to entering Plaintiff's car, Defendant Fambrough did not have a warrant to search Plaintiff's car.

29. On information and belief, prior to seizing Plaintiff's pistol, Defendant Fambrough did not have a warrant to seize Plaintiff's pistol.

30. There was no imminent danger to Defendant Fambrough or any other person with regard to the pistol, because Plaintiff's vehicle was locked, Plaintiff's pistol was secure, and Plaintiff (while secured to a gurney) had possession of his car key until Defendant Fambrough took possession of Plaintiff car key.

31. After obtaining Plaintiff's pistol, Defendant Fambrough placed Plaintiff under arrest and charged him with carrying a concealed weapon (C.R.S. § 18-12-105(1)(a),(b)) and prohibited use of a weapon while drunk (C.R.S. § 18-12-106(1)(d)).

32. On information and belief, Defendant Fambrough arrested Plaintiff without an arrest warrant.

33. On information and belief, Defendant Fambrough arrested Plaintiff to punish Plaintiff for perceived insubordinate behavior.

34. On information and belief, Defendant Fambrough arrested Plaintiff to deprive Plaintiff of his constitutional right to bear arms as protected under the U.S. Constitution.

35. At all times relevant to these claims, Plaintiff was not under the influence of alcohol or any intoxicating substance.

36. Defendant Fambrough did not (1) report any indicia of intoxication in his probable cause statement or (2) conduct any standard field sobriety tests or chemical tests to support a finding that probable cause existed to arrest Plaintiff for prohibited use of a weapon while drunk.

37. Defendant Fambrough did not sufficiently observe Plaintiff to determine whether he was intoxicated.

38. Defendant Fambrough did not interview any patrons of the Pierre Supper Club, many of whom observed Plaintiff prior to and following the accident.

39. Subsequent to arresting Plaintiff, Defendant Fambrough drafted a statement setting forth the probable cause to arrest Plaintiff.  In his probable cause statement, Defendant Fambrough knowingly made false statements with the intent to fabricate probable cause and justify his arrest of Plaintiff where no probable cause existed.  Such false statements include that:

    a. Plaintiff admitted to drinking some alcohol and carelessly walking out in front of a moving vehicle.  In fact, Plaintiff made no such statement to Defendant Fambrough.

    b.    Defendant Fambrough Mirandized Plaintiff. In fact, Defendant Fambrough did not Mirandize Plaintiff.

    c.    Plaintiff's injuries were "minor facial wounds." In fact, Plaintiff's facial wounds were quite severe, which included, missing, chipped and/or loosened teeth (an estimated cost of $14,500.00 to repair); a laceration on the outside of his upper lip (requiring 10 sutures), a laceration on the inside his mouth (requiring 6 sutures); a tooth embedded in his lip; and a concussion. Blood was pouring from Plaintiff's mouth.

    d.    Plaintiff stated he has a concealed carried permit, but that it was not in his possession. In fact, Plaintiff stated his concealed handgun permit was in his wallet. Plaintiff told Defendant Fambrough numerous times that his concealed carry was in his wallet. Defendant Fambrough removed Plaintiff's driver's license from his wallet, but made no effort to look for Plaintiff's concealed handgun permit.

40. While in custody, Plaintiff was greatly shamed by being stripped naked and searched by the Defendants.

41. While in custody, Plaintiff was further shamed by having to confront other persons in custody were Plaintiff's current and/or former clients.

42. After Plaintiff posted bail, Defendants refused to release Plaintiff until after he came before the judge. Defendants held Plaintiff notwithstanding Plaintiff's payment of bail, because of the alleged concealed weapon violation, which Defendants knew such allegations were baseless and false. Defendants knew or

should have known that it was unconstitutional to continue to detain Plaintiff after Plaintiff posted bail; but Defendants did so anyway.  When Plaintiff came before the judge, the judge ordered Plaintiff's immediate release, because Plaintiff had already posted bail.

43. When Plaintiff was released from jail, his personal effects were returned to him in a plastic bag.  Within the plastic bag, Plaintiff observed that the contents of his wallet had been emptied into the bag.  Plaintiff saw his concealed handgun permit inside the bag, which was in his wallet.

44. On information and belief, sometime prior to January 15, 2014, Defendants advised Arapahoe County that Plaintiff was arrested on charges of "Carrying a Concealed Weapon" and "Weapon-Prohibited use."

45. As a result of Defendants' acts and/or omissions, Plaintiff's concealed handgun permit was revoked for nearly a year.

46. As a result of Defendants' acts and/or omissions, Plaintiff's pistol was seized and held by Defendants until on or about December 12, 2014 – nearly a year.

47. As a result of Defendants' acts and/or omissions, Plaintiff was prohibited from owning or possessing a firearm as a condition of bond for nearly a year.

48. As a result of Defendants' acts and omissions, Plaintiff lost his employment as a bondsmen until Arapahoe County reissued his permit in January 2015 – approximately a year.

49. Following a jury trial, Mr. Scott was found not guilty.

50. As a direct and proximate result of the acts of Defendants, Plaintiff suffered the following injuries and damages:

   a. Violations of his constitutional rights under the Second, Fourth, Fifth Eighth, and Fourteenth Amendments to the U.S. Constitution.

   b. Violation of his constitutional rights under the Fourth and Fourteenth Amendments to the U.S. Constitution to be free from unreasonable searches and seizures of his person.

   c. Violation of his constitutional rights under the Fourth and Fourteenth Amendments to the U.S. Constitution to be free from unreasonable searches and seizures of his property.

   d. Loss of physical liberty.

   e. Emotional distress, anxiety, embarrassment, and shame.

51. The actions of Defendants violated the following clearly established and well-settled constitutional rights of Plaintiff:

   a. The right to bear arms.

   b. Freedom from unreasonable searches and seizure of his person under the Fourth Amendment and Fourteenth Amendment of the U.S. Constitution.

   c. Freedom from unreasonable searches and seizure of his property under the Fourth Amendment and Fourteenth Amendment of the U.S. Constitution.

   d. The right to due process of law.

   e. The right to reasonable bail.

      f.      Protection from cruel and unusual punishment.

52. At all times relevant, Defendant Fambrough was acting under color of law and under color of authority as police officers, employees, and agents or servants of the City of Denver, Colorado.

### FIRST CLAIM FOR RELIEF
(42 U.S.C. § 1983)

53. Plaintiff incorporates by reference all paragraphs of this Complaint as though fully set forth herein.

54. Defendants established customs, policies, practices, and official acts for the forthright investigation of cases.

55. Defendants established customs, policies, practices, and official acts for retrieving and producing exculpatory evidence requested during criminal proceedings.

56. The allegations against Plaintiff were unequivocally false; however, Defendants proceeded to jail Plaintiff, bring charges against him, and try them to a jury.

57. Defendants acted knowingly and with deliberate indifference to Plaintiff's rights.

58. Defendants acted under the color of State law.

59. The violations of Plaintiff's rights were a cause of Plaintiff's damages, which are in an amount to be proven at trial.

60. This conduct on the part of the Defendant's represents a violation of 42 U.S.C § 1983, because their actions were undertaken under the color of state law.

61. The Second Amendment to the United States Constitution guarantees that an individual citizen has the right to bear arms.

62. The Fourth Amendment to the United States Constitution guarantees that an individual citizen has the right to be free from unreasonable searches and seizures.

63. The Fifth Amendment to the United States Constitution guarantees that an individual citizen shall not be deprived of life or liberty without due process of law.

64. The Eighth Amendment to the United States Constitution protects an individual citizen from cruel and unusual punishments.

65. The Eighth Amendment to the United States Constitution guarantees an individual citizen a right to reasonable bail.

66. The Fourteenth Amendment to the United States Constitution guarantees that neither the life nor the liberty of individual citizens will be taken away without due process of law.

67. The Fourteenth Amendment also protects citizens against arbitrary and oppressive government actions that impact the citizen's life or liberty interest.

68. As a direct and proximate result of the Defendants' conduct, Plaintiff suffered injuries, damages and losses and was deprived life and liberty, denied due process of law, denied the right to bear arms, subjected to unreasonable seizures, endured cruel and unusual punishment, denied a reasonable bail, and was subjected to abuse by those acting under color of law in violation of the Second, Fourth, Fifth, Eighth, and Fourteenth Amendments and the Bill of Rights.

### SECOND CLAIM FOR RELIEF
(Malicious Prosecution)

69. Plaintiff incorporates by reference all paragraphs of this Complaint as though fully set forth herein.

70. A criminal case was brought against Plaintiff.

71. The criminal case was brought as a result of oral or written statements Defendant Fambrough made.

72. The criminal case ended in favor of Plaintiff.

73. Defendants Fambrough's statements against Plaintiff were made without probable cause.

74. Defendants Fambrough's statements against Plaintiff were motivated by malice towards Plaintiff.

75. The criminal case was a cause of Plaintiff's damages.

### THIRD CLAIM FOR RELIEF
(Abuse of Process)

76. Plaintiff incorporates by reference all paragraphs of this Complaint as though fully set forth herein.

77. Defendants intentionally caused criminal proceedings against Plaintiff.

78. The principal reason for Defendants actions were other than to seek justice for the conduct alleged in the criminal proceedings.

79. Defendant's conduct and/or the criminal proceedings caused Plaintiff's damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendants for the following relief:

A. A judgment in favor of Plaintiffs against Defendants in an amount to be proven at trial;

B. A monetary award for attorney's fees and costs of this action, pursuant to 42 U.S.C. § 1988;

C. Interest on the above judgments; and

D. Such other and further relief that this Court finds to be just, proper and equitable.

A JURY TRIAL IS HEREBY DEMANDED

DATED: January 8, 2016


　　　/s/ Andrew D. Thompson　
Andrew D. Thompson, #39300
Gordon & McWhirter LLC
5500 East Yale Avenue, Suite 300
Denver, Colorado 80222
Telephone: (303) 756-0800
Fax:  (303) 756-9315
Email:  athompson@gorlaw.com
Attorney for Plaintiff Louis Scott